**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

─────────────────────────────────

FELIX N.,

                                        Plaintiff,

          v.

COMMISSIONER OF SOCIAL SECURITY,                    No. 5:23-CV-00933
                                                    (LEK/CFH)

                                        Defendant.

─────────────────────────────────

**APPEARANCES:**                          **OF COUNSEL**

Hiller Comerford Injury & Disability Law    JUSTIN M. GOLDSTEIN, ESQ.
6000 North Bailey Avenue – Suite 1A
Amherst, New York 14226
Attorney for plaintiff

Social Security Administration              VERNON NORWOOD, ESQ.
Office of the General Counsel
6401 Security Boulevard
Baltimore, Maryland 21235
Attorney for defendant

**CHRISTIAN F. HUMMEL**
**U.S. MAGISTRATE JUDGE**

### REPORT-RECOMMENDATION AND ORDER[1]

          Felix N.[2] ("plaintiff") brings this action pursuant to 42 U.S.C. § 405(g) seeking

review of a decision by the Commissioner of Social Security ("the Commissioner")

denying his application for supplemental security income.  See Dkt. No. 1.  Plaintiff

─────────────────────

[1] This matter was referred to the undersigned for completion of a Report and Recommendation in accordance with General Order 18 and Local Rule 72.3(d).  See Dkt. No. 4.
[2] In accordance with guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, which was adopted by the Northern District of New York in 2018 to better protect personal and medical information of non-governmental parties, this Report-Recommendation and Order will identify plaintiff's last name by initial only.

moves for the Commissioner's decision to be vacated and remanded for further proceedings. See Dkt. No. 12. The Commissioner moves for judgment on the pleadings and for the Commissioner's decision to be affirmed. See Dkt. No. 13. Plaintiff filed a reply. See Dkt. No. 14. For the following reasons, it is recommended that plaintiff's motion be granted, the Commissioner's motion be denied, and the Commissioner's decision be reversed and remanded for further proceedings.

## I. Background

On March 11, 2021, plaintiff an application for supplemental security income, alleging a disability onset date of March 11, 2021. See T. at 12, 61.[3] The Social Security Administration ("SSA") denied plaintiff's claim on May 27, 2021. See id. at 103-06. Plaintiff sought reconsideration of the decision, see id. at 114-16, and his claim was again denied on July 6, 2021. See id. at 117-24. Plaintiff appealed and requested a hearing, see id. at 125-28, and a hearing was held before Administrative Law Judge ("ALJ") Jeremy G. Eldred on February 11, 2022. See id. at 27-43. On March 2, 2022, the ALJ issued an unfavorable decision. See id. at 9-22. On June 5, 2023, the Appeals Council denied plaintiff's request for review of the ALJ's decision. See id. at 1-3. Plaintiff timely commenced this action on August 1, 2023. See Dkt. No. 1.

## II. Legal Standards

### A. Standard of Review

---

[3] "T." followed by a number refers to the pages of the administrative transcript filed by the Commissioner. See Dkt. No. 9. Citations to the administrative transcript refer to the pagination in the bottom, right-hand corner of the page.

In reviewing a final decision of the Commissioner, a district court may not determine de novo whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1388(c)(3); see also Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. See Johnson v. Bowen, 817 F.2d 983, 985-86 (2d Cir. 1987); see also Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982). Substantial evidence is "more than a mere scintilla," meaning that in the record one can find "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Halloran v. Barnhart, 362 F.3d 28, 31 (2d Cir. 2004) (per curiam) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971) (internal citations omitted)). The substantial evidence standard is "a very deferential standard of review . . . [This] means once an ALJ finds facts, we can reject [them] only if a reasonable factfinder would have to conclude otherwise." Brault v. Soc. Sec. Admin., Comm'r, 683 F.3d 443, 448 (2d Cir. 2012) (per curiam) (citation, emphasis, and internal quotations marks omitted). Where there is reasonable doubt as to whether the Commissioner applied the proper legal standards, the decision should not be affirmed even though the ultimate conclusion is arguably supported by substantial evidence. See Martone v. Apfel, 70 F. Supp. 2d 145, 148 (N.D.N.Y. 1999) (citing Johnson, 817 F.2d at 986). However, if the correct legal standards were applied and the ALJ's finding is supported by substantial evidence, such finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the

[Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citation omitted).

### B. Determination of Disability

"Every individual who is under a disability shall be entitled to a disability . . . benefit . . . ." 42 U.S.C. § 423(a)(1)(E). Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" Id. § 423(d)(1)(A). A medically-determinable impairment is an affliction that is so severe that it renders an individual unable to continue with his or her previous work or any other employment that may be available to him or her based upon age, education, and work experience. See id. § 423(d)(2)(A). Such an impairment must be supported by "medically acceptable clinical and laboratory diagnostic techniques." Id. § 423(d)(3). Additionally, the severity of the impairment is "based on objective medical facts, diagnoses[,] or medical opinions inferable from [the] facts, subjective complaints of pain or disability, and educational background, age, and work experience." Ventura v. Barnhart, No. 04-CV-9018 (NRB), 2006 WL 399458, at *3 (S.D.N.Y. Feb. 21, 2006) (citing Mongeur v. Heckler, 722 F.2d 1033, 1037 (2d Cir. 1983)).

The Second Circuit employs a five-step analysis, based on 20 C.F.R. § 404.1520, to determine whether an individual is entitled to disability benefits:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.
>
> If he [or she] is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which

significantly limits his [or her] physical or mental ability to do basic work activities.

If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him [or her] disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.

Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he [or she] has the residual functional capacity to perform his [or her] past work.

Finally, if the claimant is unable to perform his [or her] past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry, 675 F.2d at 467 (spacing added). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." Barnhart v. Thomas, 540 U.S. 20, 24 (2003). The plaintiff bears the initial burden of proof to establish each of the first four steps. See DeChirico v. Callahan, 134 F.3d 1177, 1180 (2d Cir. 1998) (citing Berry, 675 F.2d at 467). If the inquiry progresses to the fifth step, the burden shifts to the Commissioner to prove that the plaintiff is still able to engage in gainful employment somewhere. See id. (citing Berry, 675 F.2d at 467).

### III. The ALJ's Decision

Applying the five-step disability sequential evaluation, the ALJ first determined that plaintiff "ha[d] not engaged in substantial gainful activity since March 11, 2021, the application date." T. at 14. At step two, the ALJ found that plaintiff "ha[d] the following

'severe' impairments: degenerative disc disease of the lumbosacral spine, lumbosacral

radiculopathy, impingement syndrome of the left shoulder, left carpal tunnel syndrome,

obesity, depressive disorder, and anxiety disorder." Id.  At step three, the ALJ

determined that plaintiff did not have an impairment or combination of impairments that

met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part

404, Subpart P, Appendix 1.  See id. at 15.  Before reaching step four, the ALJ

concluded that plaintiff retained the residual functional capacity ("RFC") to

> perform a full range of work at the light exertional level, as
> defined in the regulations, except he can balance, kneel, or
> crouch no more than frequently; can climb, stoop, or crawl no
> more than occasionally; can reach no more than frequently;
> can understand, remember, and carry out simple and routine
> instructions; can concentrate, persist, and maintain pace in a
> work setting to the extent necessary to perform simple and
> routine tasks; can interact no more than occasionally with
> supervisors, co-workers, or the public; and can appropriately
> adapt to ordinary changes in an unskilled occupation that
> involves simple and routine tasks.

Id. at 17.  At step four, the ALJ determined that plaintiff did not have any past relevant

work.  See id. at 21.  At step five, the ALJ concluded that "considering [plaintiff's] age,

education, work experience, and residual functional capacity, there are jobs that exist in

significant numbers in the national economy that [plaintiff] can perform."  Id.  Thus, the

ALJ determined that plaintiff "has not been under a disability, as defined in the Social

Security Act, since March 11, 2021, the date the application was filed."  Id. at 22.


## IV. Discussion

### A. The Parties' Arguments[4]

---

[4] The Court's citations to the parties' briefs refer to the pagination generated by CM/ECF, located in the header of each page.

Plaintiff argues that "[t]he ALJ erred when failing to identify substantial evidence supporting the residual functional capacity finding and erred when failing to evaluate the medical opinions and symptomology pursuant to the appropriate legal standards." Dkt. No. 12 at 9. Plaintiff specifically asserts that the ALJ erred in his assessment of (1) the opinions of Anthony Rotella, D.O., Thomas Grady, M.D., and Martin Schaeffer, M.D.; (2) the opinions of Elke Lorensen, M.D., S. Naroditsky, M.D., and S. Padmaraju, M.D.; and (3) plaintiff's subjective complaints. See id. at 11-25; see also Dkt. No. 14 at 2-8.

The Commissioner argues that "substantial evidence supports the Commissioner's decision[,] and it is free of legal error and, therefore, should be affirmed." Dkt. No. 13 at 2. Specifically, the Commissioner contends that substantial evidence supports (1) the ALJ's RFC determination;[5] (2) the ALJ's evaluation of the medical source opinions of record; and (3) the ALJ's evaluation of plaintiff's subjective complaints. See id. at 12-24.

### B. Opinions of Dr. Rotella, Dr. Grady, and Dr. Schaeffer

Dr. Rotella completed a medical source statement on December 17, 2021, noting that he met with plaintiff every three to four months for back pain. See T. at 821. Dr. Rotella opined that plaintiff was capable of only low stress jobs. See id. Dr. Rotella also opined that, as a result of plaintiff's impairments, if he were placed in a competitive work situation, he could walk less than one city block without rest or severe pain; sit at one time for one hour; stand at one time for thirty minutes; and sit for about two hours total and stand for about two hours total in an eight-hour working day. See id. Dr.

---

[5] The undersigned notes that plaintiff did not raise any specific argument regarding the ALJ's RFC determination and instead focuses primarily on the ALJ's evaluation of the medical opinion evidence and his subjective complaints. See generally Dkt. Nos. 12, 14.

Rotella further opined that plaintiff needs a job that permits shifting positions at will from sitting, standing, or walking, and sometimes needs to take unscheduled breaks during an eight-hour working day.  See id. at 821-22.  Dr. Rotella also noted that plaintiff could lift and carry less than ten pounds frequently, ten pounds occasionally, twenty pounds rarely, and never fifty pounds, and plaintiff would likely be absent more than four days per month as a result of his impairments or treatment.  See id. at 822-23.  Dr. Rotella concluded that plaintiff would occasionally experience pain or other symptoms severe enough to interfere with attention and concentration needed to perform even simple work tasks.  See id. at 823.

Dr. Grady completed a medical source statement on December 18, 2021, noting that plaintiff's diagnoses include sleep apnea, osteoarthritis, hypertension, hyperlipidemia, and sinus node dysfunction.  See T. at 824.  Dr. Grady also noted that plaintiff's prognosis was "good but activities [were] limited due to osteoarthritis."  Id.  Dr. Grady opined that plaintiff was capable of only low stress jobs and, as a result of plaintiff's impairments, if he were placed in a competitive work situation, he could walk one city block without rest or severe pain; sit at one time for thirty minutes; stand at one time for fifteen minutes; and sit for about two hours total and stand for less than two hours total in an eight-hour working day.  See id.  Dr. Grady further opined that plaintiff needs a job that permits shifting positions at will from sitting, standing, or walking, and needs to, on a daily basis, take unscheduled breaks lasting around five minutes during an eight-hour working day.  See id. at 824-25.  Dr. Grady noted that plaintiff could lift and carry ten pounds occasionally, twenty pounds rarely, and never fifty pounds, and plaintiff would likely be absent about four days per month as a result of his impairments

or treatment.  See id. at 825-26.  Dr. Grady concluded that plaintiff would frequently experience pain or other symptoms severe enough to interfere with attention and concentration needed to perform even simple work tasks.  See id. at 826 (noting that plaintiff "should work in a well-ventilated environment and also avoid extreme temperatures[;] his osteoarthritis limits his ability to be active").

Dr. Schaeffer completed a medical source statement on January 19, 2022, noting that he has been meeting with plaintiff since March 17, 2021, for plaintiff's lumbosacral radiculopathy.  See T. at 843.  Dr. Schaeffer opined that plaintiff was capable of only low stress jobs and, as a result of his impairments, if he were placed in a competitive work situation, he could walk less than one city block without rest or severe pain; sit at one time for five to ten minutes; stand at one time for five to ten minutes; and sit for less than two hours total and stand for less than two hours total in an eight-hour working day.  See id.  Dr. Schaeffer further opined that plaintiff needs a job that permits shifting positions at will from sitting, standing, or walking; he will frequently need to take unscheduled breaks during an eight-hour working day; and he will also require the use of a cane or other assistive device while engaging in occasional standing/walking.  See id. at 843-44.  Dr. Schaeffer also noted that plaintiff could lift and carry less than ten pounds rarely and never ten pounds, and plaintiff would likely be absent more than four days per month as a result of his impairments or treatment.  See id. at 844-45.  Dr. Schaeffer concluded that plaintiff would constantly experience pain or other symptoms severe enough to interfere with attention and concentration needed to perform even simple work tasks.  See id. at 845.

In a combined analysis, the ALJ found "the assessments of [plaintiff's] physical limitations from his primary care physician, Anthony Rotella, D.O., his cardiologist, Thomas Grady, M.D., and his pain management physician, Martin Schaeffer, M.D., unpersuasive considering the same evidence."  T. at 19 (citing T. at 821-23, 824-26, 843-45).  The ALJ stated that "[a]ll of these opinions concluded that [plaintiff] could not even work at the sedentary level of exertion"; however, "[n]one of these assessments [are] well supported by reference to objective medical evidence."  Id.  The ALJ noted that,

> [f]or example, Dr. Rotella's recent treatment records do not consistently show physical examination findings that would support his assessment.  Dr. Schaeffer cited [plaintiff's] statements as the basis for at least some aspects of his assessment, and the physical examination findings in Dr. Schaeffer's underlying treatment records do not strongly support the limitations shown in his assessment.  Dr. Schaeffer's records consistently show that the claimant has a normal gait, normal lumbar lordosis, and normal motor strength of the lower extremities.  Dr. Grady simply attributed [plaintiff's] purported limitations to osteoarthritis, but Dr. Grady is a cardiologist, and his treatment records do not include physical examination findings consistent with significant functional loss due to osteoarthritis.

Id. (citations omitted).  The ALJ "also [found] the opinions of Dr. Rotella, Dr. Grady, and Dr. Schaeffer inconsistent with other substantial evidence of record, such as the opinions of Dr. Naroditsky, Dr. Padmaraju, and Dr. Lorensen," as well as plaintiff's "activities of daily living, [his] conservative treatment history for back pain, [his] improved wrist symptoms with use of a brace, and the normal electrodiagnostic studies of [his] left upper extremity."  Id. at 19-20 (citations omitted).

Plaintiff challenges the ALJ's assessment of Dr. Rotella's, Dr. Grady's, and Dr. Schaeffer's opinions, asserting that the "ALJ failed to apply the regulatory factors to the

opinions." Dkt. No. 12 at 11. Plaintiff argues that the ALJ "erred under the

supportability factor" because "the ALJ failed to discuss all of the supportive objective

evidence within the treatment notes of the opining sources[.]" Id. at 12. Plaintiff also

asserts that "the ALJ erred in the application of the consistency factor" because he

"failed to consider evidence that conflicted with his determination in significant ways."

Id. at 17, 19 (citations omitted); see Dkt. No. 14 at 4-8.

An ALJ "must consider all medical opinions and 'evaluate the[ir] persuasiveness'

based on their supportability and consistency, the author's relationship with the claimant

and specialization, and 'other factors.'" Cassandra G. v. Comm'r of Soc. Sec., 626 F.

Supp. 3d 553, 564 (N.D.N.Y. 2022) (quoting 20 C.F.R. § 416.920c(a)-(c)); see also 20

C.F.R. § 404.1520c(a)-(c). "Although the ALJ is not required to assign a specific

'weight' to a medical opinion, the ALJ must still 'articulate how [he or she] considered

the medical opinions' and 'how persuasive [he or she] find[s] all of the medical

opinions.'" Id. (quoting § 416.920c(a) and (b)(1)); see 20 C.F.R. § 404.1520c(a), (b)(1).

The ALJ must expressly "explain how [he or she] considered the supportability and

consistency factors" for a medical opinion. 20 C.F.R. §§ 404.1520c(b)(2),

416.920c(b)(2). "[S]upportability" means that "[t]he more relevant the objective medical

evidence and supporting explanations presented by a medical source are to support his

or her medical opinion(s) or prior administrative medical finding(s), the more persuasive

the medical opinions or prior administrative medical finding(s) will be." Id.

§§ 404.1520c(c)(1), 416.920c(c)(1). "[C]onsistency" means that "[t]he more consistent a

medical opinion(s) or prior administrative medical finding(s) is with the evidence from

other medical sources and nonmedical sources in the claim, the more persuasive the

medical opinion(s) or prior administrative medical finding(s) will be."  Id. §§ 404.1520c(c)(2), 416.920c(c)(2).

"A conclusory analysis of the [relevant] factors 'precludes the Court from undertaking meaningful review' of the ALJ's decision.  Indeed, '[c]ourts in this Circuit have remanded when the ALJ failed to address either supportability or consistency.'" Annjeanette B. v. Kijakazi, No. 3:22-CV-198 (ATB), 2023 WL 3040663, at *8 (N.D.N.Y. Apr. 21, 2023) (quoting Jaleesa H. v. Comm'r of Soc. Sec., 580 F. Supp. 3d 1, 9 (W.D.N.Y. 2022), and William B. J. v. Comm'r of Soc. Sec., No. 6:20-CV-0989 (LEK), 2022 WL 344059, at *5 (N.D.N.Y. Feb. 4, 2022)).  "District courts in the Second Circuit have reiterated . . . that an ALJ errs where he or she summarily concludes that an opinion is unsupported by treatment notes or inconsistent with the record."  Loni S. v. Comm'r of Soc. Sec., No. 3:22-CV-805 (CFH), 2023 WL 4195887, at *15 (N.D.N.Y. June 27, 2023) (citing Stephanie F. v. Kijakazi, No. 8:20-CV-1528 (BKS), 2022 WL 3355964, at *10 (N.D.N.Y. Aug. 15, 2022) ("[T]he ALJ's conclusory statement that [the provider's] conclusions 'are not consistent with the overall medical evidence' is not an adequate articulation of the consistency factor."), Annjeanette B., 2023 WL 3040663, at *8, and Ayala v. Kijakazi, 620 F. Supp. 3d 6, 31 (S.D.N.Y. 2022) ("The ALJ's assessment of the supportability of [the] opinions is highly conclusory.  The ALJ offered only that '[one] opinion is supported by record review' and that '[the other] opinion is supported by examination.'  Such conclusory statements offer no insight into 'how well [either doctor] supported and explained their opinion,' and are insufficient to withstand review.")); see Tyler W. v. Comm'r of Soc. Sec., No. 3:22-CV-01345 (CFH), 2024 WL 1075209 (N.D.N.Y. Mar. 12, 2024) (remanding where "the ALJ summarily concluded

that Ms. Van Pelt's opinion was 'poorly supported' and 'speculative,'" because "such conclusory statements are insufficient to meet the articulation requirements of the regulations") (internal quotation marks and citations omitted).

### 1. Supportability

"To analyze supportability, the ALJ must conduct 'an inquiry confined to the medical source's own records that focuses on how well a medical source supported and explained their opinion.'" Ayala, 620 F. Supp. 3d at 30 (quoting Vellone v. Saul, No. 1:20-CV-00261 (RA/KHP), 2021 WL 319354, at *6 (S.D.N.Y. Jan. 29, 2021), report and recommendation adopted, 2021 WL 2801138 (S.D.N.Y. July 6, 2021)).  This Court has reiterated that "opinions must be considered together with the findings contained within the accompanying treatment notes rather than being viewed only out of context and in isolation." Siham H. v. Kijakazi, No. 5:20-CV-1501 (DJS), 2022 WL 4465462, at *5 (N.D.N.Y. Sept. 26, 2022) (citing Carmen M. v. Comm'r of Soc. Sec., No. 20-CV-06532 (MJR), 2021 WL 5410550, at *6 (W.D.N.Y. Nov. 19, 2021)); see Craig A. P. v. Comm'r of Soc. Sec., No. 5:22-CV-0322 (FJS/DEP), 2023 WL 5016320, at *6 (N.D.N.Y. May 31, 2023) (noting that "the explanation provided by the author on the opinion form is only one part of the supportability analysis" and the "other, equally relevant, part derives from the treatment records of that source, whether or not the source has specifically cited to them"), report and recommendation adopted, 2023 WL 4677060 (N.D.N.Y. July 21, 2023).

Here, the ALJ concluded that Dr. Rotella's, Dr. Grady's, and Dr. Schaeffer's assessments were "[not] well supported by reference to objective medical evidence."  T. at 19.  First, as for Dr. Rotella's opinion, the ALJ noted that his "recent treatment

records do not consistently show physical examination findings that would support his assessment." Id. (citing T. at 582-616, 722-58). Although the ALJ generally cited to Dr. Rotella's treatment records, "the ALJ did not reference any specific medical evidence[.]" See Coleman v. Kijakazi, No. 3:20-CV-01588 (VLB), 2022 WL 766127, at *8 (D. Conn. Mar. 14, 2022) (concluding that the ALJ erred in his supportability analysis where the ALJ found that "the degree of limitation described by Dr. Barone [is] not seen in more recent treatment records," but did not cite to specific medical records). Notably, the ALJ's decision contains no explanation of how Dr. Rotella's "recent treatment records" do not support his December 17, 2021, assessment. T. at 19; see Brian C. v. Comm'r of Soc. Sec., No. 3:22-CV-01292 (LEK/TWD), 2024 WL 1468869, at *7-8 (N.D.N.Y. Feb. 20, 2024) (remanding where the ALJ "summarily state[d that] PA Gdovin's opinions [were] not well supported," but the ALJ's "decision contains no explanation as to how [PA Gdovin's] records undermine[d his medical] opinions"), report and recommendation adopted, 2024 WL 1069877 (N.D.N.Y. Mar. 12, 2024); see also Bridget P. v. Comm'r of Soc. Sec., No. 3:21-CV-654 (CFH), 2023 WL 2402782, at *16 (N.D.N.Y. Mar. 8, 2023) (finding error where the ALJ failed to "elaborate in any way" on how the doctors' treatment records do or do not support their medical opinions); cf. Ayla E. v. Comm'r of Soc. Sec., No. 6:23-CV-06279 (EAW), 2024 WL 3633358, at *8 (W.D.N.Y. Aug. 2, 2024) ("But contrary to [the p]laintiff's contentions, . . . the ALJ did not just make a conclusory finding but instead cited to numerous specific records and findings in these providers' own records[.] By identifying particular records that conflicted with the conclusions in the opinions, the ALJ satisfied his duties pursuant to the regulations.").

The Commissioner explains that "Dr. Rotella's unremarkable physical examination findings do not support his opinion that [p]laintiff was significantly limited in his ability to perform physical work-related activities and would be absent from work more than four days per month[,]" as "Dr. Rotella consistently observed that [p]laintiff demonstrated full muscle strength throughout his arms and legs, his heart exhibited a normal rate and rhythm, his blood pressure was stable, his lungs were clear, and he had no spinal tenderness."  Dkt. No. 13 at 16.  Thus, it appears that "the Commissioner is attempting to supply the necessary explanation as to why the ALJ" found Dr. Rotella's opinion to not be well supported.  Badaszewski v. Comm'r of Soc. Sec., No. 18-CV-796 (FPG), 2020 WL 486376, at *4 (W.D.N.Y. Jan. 30, 2020).  However, "it is well-settled that this Court may not accept 'post hoc rationalizations for agency action.'"  Id. (quoting Snell v. Apfel, 177 F.3d 128, 134 (2d Cir. 1999)); see Dkt. No. 14 at 2; see, e.g., McAllister v. Colvin, 205 F. Supp. 3d 314, 333 (E.D.N.Y. 2016) ("Such post hoc rationalizations are insufficient, as a matter of law, to bolster the ALJ's decision."); Petersen v. Astrue, 2 F. Supp. 3d 223, 234 (N.D.N.Y. 2012) ("[T]his Court may not create post-hoc rationalizations to explain the Commissioner's treatment of evidence when that treatment is not apparent from the Commissioner's decision itself.") (internal quotation marks and citation omitted); Dana Marie M. v. Comm'r of Soc. Sec., No. 6:21-CV-458 (GLS/CFH), 2022 WL 2314560 (N.D.N.Y. June 28, 2022) ("The Court cannot accept the Commissioner's post hoc rationalizations for the ALJ's 'unpersuasive' finding related to Dr. Taylor's opinions.") (citations omitted), report and recommendation adopted, 2022 WL 22210128 (N.D.N.Y. Sept. 28, 2022).

Second, as for Dr. Grady's opinion, the ALJ found that he "simply attributed [plaintiff's] purported limitations to osteoarthritis, but Dr. Grady is a cardiologist, and his treatment records do not include physical examination findings consistent with significant functional loss due to osteoarthritis."  T. at 19 (citing T. at 759-77, 824-26). However, the ALJ again fails to cite to specific treatment records, or otherwise explain how these treatment records do not support Dr. Grady's December 18, 2021, opinion. See Conklin v. Kijakazi, No. 21-CV-8486 (JLC), 2023 WL 104829, at *12 (S.D.N.Y. Jan. 5, 2023) ("[T]he ALJ did not address, let alone discuss in any detail, how Dr. Gindes' conclusions were supported by his own findings. . . . [Thus,] her [supportability] analysis is inadequate under the regulations."); see also Acosta Cuevas v. Comm'r of Soc. Sec., No. 20-CV-0502 (AJN/KHP), 2021 WL 363682, at *14 (S.D.N.Y. Jan. 29, 2021) (finding that the ALJ failed to properly apply the supportability factor where "[n]owhere in [her] decision [did] she explain, as the new regulations require, what the respective [physicians] used to support their opinions and reach their ultimate conclusions"), report and recommendation adopted sub nom. Cuevas v. Comm'r of Soc. Sec., 2022 WL 717612 (S.D.N.Y. Mar. 10, 2022); cf. Rosario v. Comm'r of Soc. Sec., No. 20-CV-7749 (SLC), 2022 WL 819810, at *10 (S.D.N.Y. Mar. 18, 2022) (concluding that the ALJ satisfied the supportability factor by "analyzing [the physician assistant's] underlying treatment records against her opinion, and finding an incongruity").

Moreover, the ALJ's conclusion that Dr. Grady's opinion was not well supported appears to rest on the unfounded assumption that Dr. Grady, a cardiologist, is unfamiliar with the limitations caused by osteoarthritis.  See, e.g., Andrew J. Hall et al., Association between osteoarthritis and cardiovascular disease: Systematic review and

meta-analysis, 23(9) EUR. J. OF PREVENTATIVE CARDIOLOGY 938, 938-46 (2016) (explaining the overlap between osteoarthritis and cardiovascular disease); Shields v. Comm'r of Soc. Sec., 732 F. App'x 430, 439 (6th Cir. 2018) (remanding where "the ALJ is asserting that Lohman's opinion is not well-supported, [but] he points to no clinical or laboratory evidence that contradicts the doctor's analysis. He simply rests his determination on the unfounded assumption that Lohman, a cardiologist, is unfamiliar with the side effects of [certain] medications."); Wendy H. v. Comm'r of Soc. Sec., No. 3:19-CV-744 (ATB), 2020 WL 2559915, at *8 (N.D.N.Y. May 20, 2020) ("The ALJ cannot substitute her own opinion for the medical evidence.") (citation omitted).

Last, as for Dr. Schaeffer's opinion, the ALJ stated that "the physical examination findings in Dr. Schaeffer's underlying treatment records do not strongly support the limitations shown in his assessment" as "Dr. Schaeffer's records consistently show that [plaintiff] has a normal gait, normal lumbar lordosis, and normal motor strength of the lower extremities." T. at 19 (citing T. at 780, 786-87, 792-93, 797, 800). However, plaintiff contends that this is a mischaracterization of Dr. Schaeffer's records because the ALJ omitted "all of [Dr. Schaeffer's] positive findings in [his] treatment notes[.]" Dkt. No. 12 at 15; see Dkt. No. 14 at 4-5; see also Martinez o/b/o M.G. v. Comm'r of Soc. Sec., No. 16-CV-1153 (PKC/RLE), 2017 WL 9538863, at *6 (S.D.N.Y. Aug. 25, 2017) ("While the ALJ's decision need not mention every item of testimony presented or reconcile explicitly every conflicting shred of medical testimony, the ALJ may not ignore or mischaracterize evidence of a person's alleged disability.") (internal quotation marks and citations omitted), report and recommendation adopted, 2017 WL 4232578 (S.D.N.Y. Sept. 22, 2017); Jackson v. Comm'r of Soc. Sec., No. 16-CV-6183 (KAM),

2019 WL 7283518, at *7 (E.D.N.Y. Dec. 27, 2019) ("Reviewing courts decry administrative cherry-picking of relevant evidence. This term refers to crediting evidence that supports administrative findings while ignoring conflicting evidence from the same source. Cherry-picking can indicate a serious misreading of evidence, failure to comply with the requirement that all evidence be taken into account, or both.") (citations omitted).

As plaintiff argues, the ALJ did not acknowledge the "positive trigger points in the diffusely palpable trigger points of the lumbar spine"; "tenderness over verbalized complaints of pain diffusely"; "lumbosacral range of motion to 5 degrees of flexion"; "active range of motion of the lumbosacral spine limited in all directions"; "patchy numbness throughout the left lower extremity"; "tenderness over L3-S1 bilaterally"; and "diminished sensation in the left L4 and S1 Dermatome."  Dkt. No. 12 at 15 (citing T. at 780, 786-87, 792, 796, 800).  Moreover, "[t]he ALJ did not discuss any of the positive diagnostic imaging evidence in the decision, including electrodiagnostic evidence of bilateral lumbosacral radiculopathies affecting the L5 nerve roots, as noted by Dr. Schaeffer in his opinion and treatment notes."  Id. at 16 (citing T. at 782-83, 785); see Hopkins v. Comm'r of Soc. Sec., No. 6:13-CV-1082 (GTS), 2015 WL 4508630, at *5 (N.D.N.Y. July 23, 2015) ("Although an ALJ need not discuss every shred of evidence, failure to discuss evidence that conflicts with an ALJ's finding prevents meaningful review.").  This was error.  See Jones v. Saul, No. 19-CV-5542 (LGS/BCM), 2020 WL 5775525, at *12 (S.D.N.Y. Sept. 11, 2020) (remanding in part because an "ALJ may not 'cherry-pick' medical opinions, or selectively cite treating notes or diagnostic imaging that support the ALJ's own view while ignoring opinions and evidence that do not"),

report and recommendation adopted, 2020 WL 5775195 (S.D.N.Y. Sept. 28, 2020); see also Andrew G. v. Comm'r of Soc. Sec., No. 3:19-CV-0942 (ML), 2020 WL 5848776, at *9 (N.D.N.Y. Oct. 1, 2020) (remanding because the ALJ cannot "pick and choose evidence in the record to support his conclusions," as doing so results in "inadequate review [that] fail[s] to set forth the crucial factors justifying the ALJ's findings with sufficient specificity to allow the Court to determine whether substantial evidence support[s] the assigned persuasiveness of the [medical] opinions") (internal quotation marks and citations omitted).

The ALJ also asserted that Dr. Schaeffer's opinion was not well supported because he "cited [plaintiff's] statements as the basis for at least some aspects of his assessment."  T. at 19 (citing T. at 843).  However, "[a]n ALJ may not reject a medical opinion solely because it relies on a plaintiff's subjective complaints."  Kelly Ann G. v. Comm'r of Soc. Sec., No. 5:20-CV-1013 (CFH), 2022 WL 160266, at *6 (N.D.N.Y. Jan. 18, 2022) (citing Tomczak v. Comm'r of Soc. Sec., No. 18-CV-64 (FPG), 2019 WL 2059679, at *1 (W.D.N.Y. May 9, 2019)).  "The Second Circuit has said that the fact that a doctor also relies on a [p]laintiff's subjective complaints does not undermine his opinion 'as a patient's report of complaints, or history, is an essential diagnostic tool.'"  Brownell v. Comm'r of Soc. Sec., No. 1:05-CV-0588 (NPM/VEB), 2009 WL 5214948, at *5 (N.D.N.Y. Dec. 28, 2009) (quoting Green-Younger v. Barnhart, 335 F.3d 99, 107 (2d Cir. 2003)).  "A physician's reliance on subjective complaints is particularly important in cases involving chronic conditions that may not be susceptible to precise diagnoses through particular medical tests[.]"  Maureen S. v. Comm'r of Soc. Sec., No. 5:20-CV-01158, 2022 WL 909219, at *5 (N.D.N.Y. Mar. 29, 2022).

An ALJ may discredit a medical opinion premised on a plaintiff's subjective complaints, however, if the ALJ has reason to believe that the plaintiff was not being truthful with those complaints.  See David B. v. Comm'r of Soc. Sec., No. 1:22-CV-06087 (CJS), 2023 WL 6225251, at *14 (W.D.N.Y. Sept. 26, 2023) ("[A]n ALJ may disregard a medical opinion premised on a [p]laintiff's self-reported symptoms if the ALJ has reason to doubt [the p]laintiff's credibility") (internal quotation marks and citations omitted).  Nevertheless, to the extent that ALJ Eldred discounted Dr. Schaeffer's opinion because it was based in part on plaintiff's subjective complaints, the ALJ failed to provide any supporting explanation.  See T. at 19.  Specifically, the ALJ did not address whether there was any indication that Dr. Schaeffer believed plaintiff was being untruthful.  See Ricottelli v. Saul, No. 3:18-CV-01314 (SALM), 2019 WL 11276514, at *12 (D. Conn. Sept. 26, 2019) ("The ALJ erred in devaluing [medical] opinions . . . because the[ opinions] relied on [the] plaintiff's subjective complaints, particularly where there are no records indicating that the physicians believed [the] plaintiff was being untruthful[.]"); see also Hickman ex rel. M.A.H. v. Astrue, 728 F. Supp. 2d 168, 173 (N.D.N.Y. 2010) ("The ALJ must build an accurate and logical bridge from the evidence to [his] conclusion to enable a meaningful review.") (internal quotation marks and citation omitted).

Without adequate discussion of the supportability factor as to Dr. Rotella's, Dr. Grady's, and Dr. Schaeffer's opinions, "the Court is left to guess at the ALJ's reasoning, which frustrates meaningful review."  Nicole L. v. Kijakazi, No. 6:20-CV-01576 (NAM), 2022 WL 160274, at *8 (N.D.N.Y. Jan. 18, 2022); see Vellone, 2021 WL 319354, at *4 ("Eschewing rote analysis and conclusory explanations, the ALJ must discuss the

crucial factors in any determination with sufficient specificity to enable the reviewing court to decide whether the determination is supported by substantial evidence."); see also Davis v. Comm'r of Soc. Sec., No. 20-CV-4282 (EK), 2024 WL 278425, at *4 (E.D.N.Y. Jan. 25, 2024) (remanding where the ALJ did not adequately analyze the supportability factor).

### 2. Consistency

"[T]o analyze consistency, the ALJ must conduct 'an all-encompassing inquiry focused on how well a medical source is supported, or not supported, by the entire record.'" Ayala, 620 F. Supp. 3d at 30 (quoting Vellone, 2021 WL 319354, at *6). "The consistency factor does not measure whether a medical opinion is consistent with a single other medical opinion—it measures whether the medical opinion is consistent with all medical and nonmedical evidence in a claim." Darla W. v. Comm'r of Soc. Sec., No. 5:20-CV-1085 (TWD), 2021 WL 5903286, at *9 (N.D.N.Y. Dec. 14, 2021) (citation omitted). "As such, identifying a lack of consistency, but failing to explain the inconsistency in the context of the medical record as a whole prevents meaningful review." James W. v. Kijakazi, No. 8:20-CV-954 (DJS), 2022 WL 685288, at *4 (N.D.N.Y. Mar. 8, 2022).

Here, the ALJ found Dr. Rotella's, Dr. Grady's, and Dr. Schaeffer's opinions to be "inconsistent with other substantial evidence of record, [including] the opinions of Dr. Naroditsky, Dr. Padmaraju, and Dr. Lorensen, [plaintiff's] activities of daily living, [his] conservative treatment history for back pain, [his] improved wrist symptoms with use of a brace, and the normal electrodiagnostic studies of [his] left upper extremity." T. at 19-20. However, "such conclusory statements are insufficient to meet the articulation

requirements of the regulations." <u>Loni S.</u>, 2023 WL 4195887, at *16.  Notably, the ALJ's

"decision . . . [does] not identify any specific inconsistencies, making it difficult for the

Court to assess his conclusions." <u>James W.</u>, 2022 WL 685288, at *4 (citation omitted);

<u>see</u> <u>Jennifer G. v. Comm'r of Soc. Sec.</u>, No. 5:22-CV-00996 (MAD/ML), 2023 WL

8435991, at *7 (N.D.N.Y. Sept. 6, 2023) ("It is well-established that an ALJ may not

generally assert that an opinion is 'consistent with' or 'supported by' the record, without

further elaboration.") (citing <u>Melissa S. v. Comm'r Soc. Sec.</u>, No. 5:21-CV-420 (DJS),

2022 WL 1091608, at *4 (N.D.N.Y. Apr. 12, 2022) ("[T]he ALJ does nothing more than

state that the opinion is inconsistent with the record but offers no explanation as to how

that is true.")) (additional citation omitted), <u>report</u> and <u>recommendation</u> <u>adopted</u>, 2023

WL 7277260 (N.D.N.Y. Nov. 3, 2023); <u>see also</u> <u>Annjeanette B.</u>, 2023 WL 3040663, at

*8-9 ("In this case, the ALJ states his general conclusion that Dr. Dean and Dr. Calkins's

opinions are inconsistent with the medical records, but offers no explanation as to how

that is true. The ALJ did not identify any specific inconsistencies[.]").

　　　　The Commissioner attempts to explain why Dr. Rotella's, Dr. Grady's, and Dr.

Schaeffer's opinions are contradicted by the record.  <u>See</u> Dkt. No. 13 at 17-19.  For

example, the Commissioner asserts that "Dr. Rotella's opinion that [p]laintiff could no

more than occasionally grasp objects, perform fine manipulations, nor reach; and only

rarely lift twenty pounds and/or climb stairs is contradicted by Dr. Lorensen's . . .

opinion," including Dr. Lorensen's observation that "[p]laintiff's hand and finger dexterity

were intact, and his hands demonstrated full grip[.]"  <u>Id.</u> at 17.  However, the ALJ did not

engage in any such analysis.  <u>See</u> T. at 19-20; <u>see also</u> Dkt. No. 14 at 2-4.  The

undersigned emphasizes, again, that "the court cannot accept the Commissioner's post

hoc rationalizations." Annjeanette B., 2023 WL 3040663, at *11; see, e.g., Kimberly S. v. Comm'r of Soc. Sec., No. 6:20-CV-06957 (LJV), 2022 WL 17082694, at *3 (W.D.N.Y. Nov. 18, 2022) ("In the Commissioner's submissions to this Court, the Commissioner tries to do the ALJ's job for him and explain what in the record led the ALJ to discount Dr. Toor's opinion. But such post hoc rationalizations cannot support the ALJ's conclusions.  In other words, the ALJ must explain why; it is not up to this Court—or the Commissioner—to figure it out afterwards.") (citation omitted); Elder v. Comm'r of Soc. Sec., No. 15-CV-7370 (MKB), 2017 WL 1247923, at *12 (E.D.N.Y. Mar. 24, 2017) ("The Court cannot consider the Commissioner's post-hoc justifications that were not addressed by the ALJ as a basis to affirm the ALJ's decision.").

As the Commissioner points out, see Dkt. No. 13 at 20, "[t]he Court's role is to assess whether the [ALJ's] determination is supported by substantial evidence, not to reweigh that evidence." Charles B. v. Kijakazi, No. 5:21-CV-953 (TJM/DJS), 2022 WL 3227572 (N.D.N.Y. July 21, 2022) (citation omitted), report and recommendation adopted sub nom. Charles B. v. Comm'r of Soc. Sec., 2022 WL 4104009 (N.D.N.Y. Sept. 8, 2022).  "Only when the ALJ provides a complete explanation, consistent with the governing regulations is the Court in a position to 'to conduct meaningful review' as to whether 'the ALJ's analysis and resulting RFC are supported by substantial evidence.'" Id. (quoting Muldowney v. Comm'r of Soc. Sec., No. 5:17-CV-0352 (TWD), 2018 WL 2417837, at *8 (N.D.N.Y. May 29, 2018)).  "Here, the Court is unable to conduct that meaningful review[.]"  Id.; see Annjeanette B., 2023 WL 3040663, at *9 ("The ALJ's failure to explain how he considered the supportability and consistency of these medical opinions was procedural error[, which was not] harmless [because] the

court cannot adequately glean how the ALJ weighed the consistency and supportability factors for [the] opinions.") (internal quotation marks and citations omitted).

Therefore, remand is recommended for the ALJ to reevaluate the supportability and consistency of Dr. Rotella's, Dr. Grady's, and Dr. Schaeffer's opinions. See Brian C., 2024 WL 1468869, at *8 ("Because there is, at least, a reasonable likelihood that a different result could have been reached if the ALJ had properly evaluated PA Gdovin's opinions pursuant to the new regulations, remand is appropriate.") (citing Leto v. Comm'r of Soc. Sec., No. 22-CV-00863 (SDA), 2023 WL 2344936, at *16 (S.D.N.Y. Mar. 3, 2023) (concluding that the procedural error was not harmless where a finding of greater limitations could result in a determination that the plaintiff was unable to work)) (additional citation omitted).

### C. Opinions of Dr. Lorensen,  Dr. Naroditsky, and Dr. Padmaraju

On May 17, 2021, plaintiff underwent a consultative examination with Dr. Lorensen.  See T. at 496-99.  Following the examination, Dr. Lorensen issued a report summarizing plaintiff's chief complaint, past history, current medications, social history, activities of daily living, as well as Dr. Lorensen's findings from the physical examination.  See id.  Dr. Lorensen diagnosed plaintiff with back pain; sciatica; cardiac arrhythmia, status post pacemaker insertion; hypertension; and arthritis.  See id. at 499. Dr. Lorensen opined that plaintiff has "[m]oderate limitations for bending, lifting, carrying, reaching, and climbing," but "[n]o gross limitations for sitting, standing, walking, or using the hands."  Id.

On May 25, 2021, Dr. Naroditsky reviewed plaintiff's medical records and rendered a disability determination at the initial level of consideration.  See T. at 60-78.

Dr. Naroditsky assessed that plaintiff could lift ten pounds frequently and twenty pounds occasionally, and he could sit, stand, and/or walk for about six hours each of an eight-hour workday.  See id. at 69.  Dr. Naroditsky also opined that plaintiff could no more than frequently balance, crouch, kneel, nor climb ladders/scaffolds/ropes, and plaintiff could no more than occasionally climb ramps/stairs, stoop, nor crawl.  See id. at 70.  Dr. Naroditsky concluded that a "review of the evidence on file shows that [plaintiff] retains the ability to perform Light Work."  Id. at 71.  On July 2, 2021, Dr. Padmaraju upheld Dr. Naroditsky's findings upon reconsideration.  See id. at 80-100.

The ALJ found all three opinions, from Dr. Lorensen, Dr. Naroditsky, and Dr. Padmaraju, to be persuasive and concluded that plaintiff "is able to perform work at the light exertional level with minor postural and reaching limitations."  T. at 18.  The ALJ summarized the findings from Dr. Lorensen, Dr. Naroditsky, and Dr. Padmaraju.  See id. at 18-19.  As for supportability, the ALJ noted that

> [t]he opinions of Dr. Naroditsky and Dr. Padmaraju are both supported by a detailed narrative rationale, and these rationales cite supporting objective medical evidence from the record, while Dr. Lorensen's opinion has support from the detailed findings from her physical examination of [plaintiff]. The only abnormal findings that Dr. Lorensen reported from her examination of [plaintiff] were a somewhat diminished ability to squat, an inability to walk on heels and toes, and reduced range of motion in his lumbar spine, bilateral shoulders, bilateral hips, and bilateral knees.

Id. at 19.  As for consistency, the ALJ found

> [t]he opinions of Dr. Naroditsky, Dr. Padmaraju, and Dr. Lorensen are also consistent with other substantial evidence of record, including the evidence described above regarding [plaintiff's] activities of daily living, [plaintiff's] conservative treatment history for back pain, [plaintiff's] improved wrist symptoms with use of a brace, and the normal

electrodiagnostic studies of the [plaintiff's] left upper extremity.

Id.

Plaintiff argues that it was erroneous for the ALJ to determine that Dr. Lorensen's, Dr. Naroditksy's, and Dr. Padmaraju's opinions were "all persuasive," given that the ALJ did not adequately assess the supportability and consistency factors as required by the regulations.  T. at 18-19; see Dkt. No. 12 at 20-23.  Plaintiff specifically asserts that the ALJ erred (1) in his supportability assessment of Dr. Lorensen's opinion because he failed to explain how Dr. Lorensen's findings from plaintiff's physical examination actually support her opinion; (2) in his supportability assessment of Dr. Naroditksy's and Dr. Padmaraju's opinions because he did not discuss what the doctors used to support their findings and reach their ultimate conclusions; and (3) in his consistency assessment of Dr. Lorensen's, Dr. Naroditksy's, and Dr. Padmaraju's opinions because he "failed to discuss the content of virtually all treatment notes, including any of the positive objective findings in the treatment notes[.]"  Id. at 21-22; see Dkt. No. 14 at 7-8.

"[A]n ALJ is entitled to rely upon the opinions of both examining and non-examining State agency medical consultants, since such consultants are deemed to be qualified experts in the field of social security disability."  Baszto v. Astrue, 700 F. Supp. 2d 242, 249 (N.D.N.Y. 2010); see Amber H. v. Saul, No. 3:20-CV-490 (ATB), 2021 WL 2076219, at *5 (N.D.N.Y. May 24, 2021) ("It is well settled that, under both the old and new regulations concerning the evaluation of medical evidence, an ALJ may rely on the opinion of a non-examining state agency consultant in disability claims.") (citing Tamara M. v. Saul, No. 3:19-CV-1138 (CFH), 2021 WL 1198359, at *7 (N.D.N.Y. Mar. 30,

2021), and Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5853 (Jan. 18, 2017), 2017 WL 168819).  An ALJ is still required, however, to articulate how persuasive he or she finds the medical opinion of such consultants, including how he or she considered the supportability and consistency factors.  See 20 C.F.R. § 404.1520c.

Here, although the ALJ found Dr. Lorensen's, Dr. Naroditksy's, and Dr. Padmaraju's opinions were "all persuasive," the ALJ failed to sufficiently explain how he considered the supportability or consistency of their opinions.  T. at 18; see Jaleesa H., 580 F. Supp. 3d at 9 (remanding where "the ALJ did not explain anything—instead, he made a conclusory statement that [an] opinion was 'generally consistent and supportive,' without any explanation of how he assessed the opinion in connection with the consistency and supportability factors which, as explained above, is required by the new regulations.").  Specifically, the ALJ did not explain how "the detailed findings" from Dr. Lorensen's physical examination actually provided support for Dr. Lorensen's opinion.  See Talford v. Comm'r of Soc. Sec., No. 22-CV-7442 (AMD), 2024 WL 1282659, at *8 (E.D.N.Y. Mar. 26, 2024) (finding error where "the ALJ did not explain how the record supported Dr. Schwartz's opinion"); see also Hernandez v. Kijakazi, No. 21-CV-4918 (VF), 2023 WL 2207601, at *9 (S.D.N.Y. Feb. 24, 2023) (concluding that the ALJ's single statement that a medical opinion was "well-supported by a review of the available evidence at the time of his finding including the consultative examination report" was inadequate because it did not explain how the "opinion was supported by the underlying medical evidence in the record"); Michael K. A. v. Comm'r of Soc. Sec., No. 6:20-CV-1302 (LEK/DEP), 2022 WL 4226099, at *8 (N.D.N.Y. Apr. 25, 2022)

(determining that the ALJ's supportability assessment was flawed where the ALJ adopted a doctor's finding that the plaintiff could lift ten pounds occasionally with his left upper extremity, but failed to explain how the doctor supported this finding), report and recommendation adopted sub nom. Apgar v. Comm'r of Soc. Sec., 2022 WL 4225234 (N.D.N.Y. Sept. 13, 2022).

Moreover, the ALJ did not explain what medical evidence Dr. Naroditsky and Dr. Padmaraju reviewed and relied upon. See Prieto v. Comm'r of Soc. Sec., No. 20-CV-3941 (RWL), 2021 WL 3475625, at *13 (S.D.N.Y. Aug. 6, 2021) (finding error where the ALJ "afforded the most weight" to the consultative examiner because the opinion was "supported by the medical evidence of record and by her underlying examination[ ]" but did not explain what medical evidence supported the opinion); see also Brianne S. v. Comm'r of Soc. Sec., No. 19-CV-1718 (FPG), 2021 WL 856909 (W.D.N.Y. Mar. 8, 2021) (concluding that the ALJ failed to adequately apply the supportability factor because the ALJ "did not examine what [the doctors] used to support their opinions and reach their ultimate conclusions."). The ALJ's conclusory references to Dr. Naroditksy's and Dr. Padmaraju's "rationale" fail "to meet the[ ] minimum levels of articulation [and] frustrates this [C]ourt's ability to determine whether [his] disability determination was supported by substantial evidence." T. at 19; Warren I. v. Comm'r of Soc. Sec., No. 5:20-CV-495 (ATB), 2021 WL 860506, at *8 (N.D.N.Y. Mar. 8, 2021); see Raymond M. v. Comm'r of Soc. Sec., No. 5:19-CV-1313 (ATB), 2021 WL 706645, at *8 (N.D.N.Y. Feb. 22, 2021) (finding error where "[t]he ALJ provided no substantive explanation for her conclusion that [an] opinion was persuasive, making only general reference to the

state agency consultant's expertise and experience, and his review of the available record.").

Further, the ALJ did not adequately discuss how Dr. Lorensen's, Dr. Naroditsky's, and Dr. Padmaraju's opinions were consistent with the other evidence in the record.  See Raymond M., 2021 WL 706645, at *8 ("At their most basic, the amended regulations require that the ALJ explain her findings regarding the supportability and consistency for each of the medical opinions, 'pointing to specific evidence in the record supporting those findings.'") (quoting Jacqueline L. v. Comm'r of Soc. Sec., 515 F. Supp. 3d 2, 11 (W.D.N.Y. 2021)).  Specifically, "[t]he ALJ . . . erred by neglecting to identify the specific objective findings on which he relied when concluding that [Dr. Lorensen's, Dr. Naroditksy's, and Dr. Padmaraju's] opinion[s were] consistent with the evidence in the record."  Alvarado v. O'Malley, No. 22-CV-9173 (JPC/RFT), 2024 WL 1073293, at *17 (S.D.N.Y. Jan. 30, 2024) (citing Jackson v. Kijakazi, 588 F. Supp. 3d 558, 586-87 (S.D.N.Y. 2022) (holding that, although the ALJ had provided a summary of the doctor's findings when concluding that the opinion was "consistent with the findings of other exams throughout the longitudinal records," the ALJ erred by not "identify[ing] the specific objective findings to which he referred")) (additional citation omitted), report and recommendation adopted, 2024 WL 1344064 (S.D.N.Y. Mar. 29, 2024); see Hernandez, 2023 WL 2207601, at *10 ("[T]he ALJ explained that Dr. Putcha's opinion was 'consistent with the evidence reviewed at the hearing level,' which described 'intact strength and mobility for most of the period at issue.'  However, the ALJ failed to identify the specific objective findings to which he referred when concluding that the opinion was consistent with the evidence in the record. . . . In sum, a

remand is appropriate[.]"); Robert K. v. Kijakazi, No. 6:21-CV-1095 (DJS), 2023 WL

2242126, at *4 (N.D.N.Y. Feb. 27, 2023) ("The ALJ's decision does not specifically

reference how the conclusions of the state agency reports were supported by the

medical record beyond a vague reference to 'multiple normal mental status evaluations.'

Nor does the decision identify any specific inconsistencies, making it difficult for the

Court to assess whether the ALJ considered this factor. . . . [Thus, t]he Court finds that

this meaningful review cannot be made here and remand is required.") (citations

omitted).

Accordingly, the ALJ's "conclusory statement[s are] an insufficient explanation of

the supportability [and consistency] factor[s] and [are] grounds for remand."  Prieto,

2021 WL 3475625, at *13 (citations omitted); see Warren I., 2021 WL 860506, at *4

(remanding because the ALJ "failed to discuss what, if any, objective medical evidence

and/or supporting explanations," supported the conclusions of the primary medical

opinion on which he relied) (internal quotation marks omitted).  "None of this is to say

that on remand, the ALJ could not ultimately come to a similar conclusion"—that Dr.

Lorensen's, Dr. Naroditksy's, and Dr. Padmaraju's opinions are, indeed, persuasive.

Brenda Lee B. v. Comm'r of Soc. Sec., No. 5:20-CV-1403 (CFH), 2022 WL 1421821, at

*9 (N.D.N.Y. May 4, 2022) (citing Kimberly W. v. Kijakazi, No. 6:20-CV-925 (DJS), 2022

WL 561665, at *5 (N.D.N.Y. Feb. 24, 2022)).  "However, the ALJ must sufficiently

explain the relevant factors such that the Court can meaningfully review whether those

conclusions are based on substantial evidence."  Id. (citing Stacy D. v. Comm'r of Soc.

Sec., 358 F. Supp. 3d 197, 202 (N.D.N.Y. 2019) ("An ALJ must set forth the crucial

factors justifying his findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision.")).

On remand, the ALJ should revisit his supportability and consistency assessments for Dr. Lorensen's, Dr. Naroditksy's, and Dr. Padmaraju's opinions.

### D. Plaintiff's Subjective Complaints

"At his hearing on February 11, 2022, [plaintiff] testified that his impairments involve his heart and mainly his back."  T. at 17.  "He stated that he has scoliosis, sciatica, and disc disease[;] [a]s a result, he moves like an old man and is very fragile."  Id.  Plaintiff "testified that he has support bars in his shower and uses a cane to walk around."  Id.  Plaintiff "also testified that he has tendonitis on his left hand and uses a CPAP machine."  Id.  Plaintiff "stated that he will be getting steroid shots as a form of treatment for his pain."  Id.  Plaintiff "testified that he is afraid to go out and be around people because he is so fragile"; "[h]e relies on another person to do shopping."  Id. at 17-18.  Plaintiff "also testified that he has a pacemaker and that the alarm on this device goes off."  Id. at 18.

Given his testimony, the ALJ concluded that plaintiff "has medically determinable impairments that can reasonably be expected to cause the symptoms he described during his testimony"; "[h]owever, the evidence does not fully support [plaintiff's] allegations regarding the extent of the functional limitations caused by his symptoms."  T. at 18.  The ALJ noted that, "[a]s an initial matter, [plaintiff's] Function Report and certain medical examination reports describe activities that are consistent with the ability to perform unskilled light work."  Id. (citing T. at 233-40, 496-507).

> For example, [plaintiff] stated in his Function Report that he
> prepares his own meals, vacuums his floors, wipes down his

furniture, goes out to appointments, can go out alone, shops in stores, is able to pay bills, can count change, can handle a savings account, and is capable of using a checkbook or money order. This report also states that [plaintiff] reads and watches television, has a fiancée with whom he spends time, has never been fired or laid off from a job because of problems getting along with other people, and does "okay" handling stress. [Plaintiff] reported at his consultative internal medicine examination that he cooks once a week, showers five times per week, dresses twice a week, and watches television. During his consultative psychiatric evaluation, [plaintiff] reported that is able to dress, bathe, and groom himself on a daily basis, can do some cooking, and can manage money.

Id. (citing T. at 233-40, 496-507). The ALJ then went on to discuss the medical opinion evidence, including the opinions from Dr. Naroditsky, Dr. Padmaraju, Dr. Lorensen, Dr. Rotella, Dr. Grady, and Dr. Schaeffer. See id. at 18-20.

Plaintiff challenges the ALJ's assessment of his subjective complaints, arguing that "the ALJ failed to follow the appropriate legal standards when discounting [his] allegations." Dkt. No. 12 at 23. First, plaintiff argues that the ALJ mischaracterized the record when concluding that his "Function Report and certain medical examination reports describe activities that are consistent with the ability to perform unskilled light work[.]" Id. at 23-24. Second, plaintiff asserts the ALJ erred when he "did not discuss the content in the treatment notes supportive and consistent with the medical opinions, and the same evidence was similarly not discussed in relation to any of [p]laintiff's allegations" Id. at 25; see Dkt. No. 14 at 5, 8-9.

In assessing an individual's subjective claims of symptoms, an ALJ must first determine whether the "individual has a medically determinable impairment that could reasonably be expected to produce the [alleged] symptom[s,]" and, if so, the ALJ must then "evaluate the intensity and persistence of those symptoms to determine the extent

to which th[ose] symptoms limit [the] individual's ability to perform work-related activities[.]"  SSR 16-3p, 2017 WL 5180304, at *3 (Oct. 25, 2017); see Lori S. C. v. Comm'r of Soc. Sec., No. 3:22-CV-0625 (AMN/DEP), 2023 WL 5776433, at *4 (N.D.N.Y. June 1, 2023) (discussing the two-step review protocol for assessing a claimant's subjective reports of symptoms), report and recommendation adopted, 2023 WL 5089017 (N.D.N.Y. Aug. 9, 2023).

> When addressing this second prong, an ALJ must consider the objective medical evidence and other evidence in the record, including statements by the claimant and reports from both medical and non-medical sources, and must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms, considering relevant factors which include evidence regarding (1) daily activities, (2) the location, duration, frequency, and intensity of pain or other symptoms, (3) factors that precipitate or aggravate the claimant's symptoms, (4) the type, dosage, effectiveness, and side effects of medication, (5) any treatment other than medication that is used to relieve the symptoms, (6) other measures to obtain relief of symptoms, and (7) any other relevant factors.

Amy T. v. Comm'r of Soc. Sec., No. 5:20-CV-0910 (DEP), 2021 WL 6063057, at *5 (N.D.N.Y. Dec. 22, 2021) (citing SSR 16-3p, 2017 WL 5180304, at *3-8).

"An ALJ who rejects [a claimant's] subjective testimony . . . 'must do so explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief and whether his [or her] determination is supported by substantial evidence.'"  Martone v. Apfel, 70 F. Supp. 2d 145, 151 (N.D.N.Y. 1999) (citing Brandon v. Bowen, 666 F. Supp. 604, 608 (S.D.N.Y. 1987)).  "The ALJ's decision need not contain a discussion of all of the potentially relevant factors listed above," as long as "it is clear from the decision that the ALJ considered all of the evidence and that he or she provided specific reasons for his or her determination as to the intensity,

persistence, and limiting effect of the claimant's symptoms."  Amy T., 2021 WL
6063057, at *5 (citing Cichocki v. Astrue, 534 F. App'x 71, 76 (2d Cir. 2013) (summary
order) (finding that the ALJ's failure to discuss certain factors did not require remand
because the ALJ provided specific reasons for his determination "and the record
evidence permits us to glean the rationale of the ALJ's decision")).  "Where the ALJ's
findings are supported by substantial evidence, the decision to discount subjective
testimony may not be disturbed on court review."  Crysler v. Astrue, 563 F. Supp. 2d
418, 440 (N.D.N.Y. 2008) (citing Aponte v. Sec'y, Dep't of Health & Human Servs., 728
F.2d 588, 591 (2d Cir. 1984)); see Banks v. Comm'r of Soc. Sec., No. 20-CV-3867 (EK),
2023 WL 5718757, at *3 (E.D.N.Y. Sept. 5, 2023) ("The ALJ's assessment of an
individual's 'subjective complaints' regarding her pain and other symptoms is entitled to
substantial deference by a reviewing court.") (quoting Rivera v. Berryhill, No. 17-CV-991
(JLC), 2018 WL 4328203, at *10 (S.D.N.Y. Sept. 11, 2018)).

Here, the ALJ found that "the evidence does not fully support [plaintiff's]
allegations regarding the extent of the functional limitations caused by his symptoms."
T. at 18.  However, plaintiff's complaints appear to be supported by and consistent with
the assessments from Dr. Rotella, Dr. Grady, and Dr. Schaeffer.  See, e.g., id. at 34
(testifying that he can't stand or sit for too long "because the pain goes . . . all the way
down to [his] leg and . . . gives [him] a tingling sensation"); Id. at 821 (opining that,
during an eight-hour working day, plaintiff can sit for one hour total before needing to
get up and stand for thirty minutes total before needing to sit down); Id. at 824 (opining
that, during an eight-hour working day, plaintiff can sit at one time for thirty minutes total

and stand at one time for fifteen minutes total); Id. at 843 (opining that plaintiff must use a cane or other assistive device when engaging in occasional standing/walking).

"As discussed above, the ALJ erred in considering those opinions, which, in turn, undermines his decision to discount [p]laintiff's subjective complaints." Eric C.T. v. Comm'r of Soc. Sec., No. 1:23-CV-00996 (GRJ), 2024 WL 449291, at *8 (S.D.N.Y. Feb. 5, 2024); see Diana C. v. Comm'r of Soc. Sec., No. 1:19-CV-07474 (LGS/GRJ), 2022 WL 1912397, at *9 (S.D.N.Y. Apr. 11, 2022) ("The ALJ found [the p]laintiff's subjective complaints not supported by the objective medical records[; however, t]his finding ignores the assessments of Dr. Rybarov[.] . . . As outlined above, the ALJ did not afford proper weight to Dr. Rybarov's assessments, which in turn undermines the decision to discount [the p]laintiff's subjective complaints."), report and recommendation adopted sub nom. Cruz v. Comm'r of Soc. Sec., 2022 WL 1912310 (S.D.N.Y. June 3, 2022); see also Sheenalee D. v. Comm'r of Soc. Sec., No. 8:19-CV-140 (TJM/ATB), 2020 WL 1034396, at *11 (N.D.N.Y. Feb. 3, 2020) ("Because the ALJ erred in her prior analysis, [including the weighing of the opinion evidence,] her analysis of plaintiff's subjective symptoms suffers from the same defect."), report and recommendation adopted, 2020 WL 1030652 (N.D.N.Y. Mar. 3, 2020).

Thus, it is recommended that the ALJ reassess plaintiff's subjective complaints and provide specific explanations for his findings on remand. See Michelle C. v. Comm'r of Soc. Sec., No. 1:23-CV-07144 (JMF/GRJ), 2024 WL 1706000, at *9 (S.D.N.Y. Apr. 3, 2024) ("The record, including the medical opinion evidence referenced above, tends to support [the p]laintiff's subjective reports[.]  The ALJ's errors in considering the medical opinion evidence and interpreting the treatment record, as

outlined above, likewise undermine the decision to discount [the p]laintiff's subjective complaints.  A remand is necessary."); see also Crystal C. v. Comm'r of Soc. Sec., No. 5:20-CV-807 (ATB), 2021 WL 7711083, at *11 (N.D.N.Y. Dec. 10, 2021) ("Because the ALJ erred in her prior analysis, her analysis of plaintiff's subjective symptoms suffers from the same defect. Should the district court adopt my recommendation, the ALJ is directed to re-evaluate plaintiff's subjective symptoms, and provide specific explanations for her findings[.]"), report and recommendation adopted, 2022 WL 913220 (N.D.N.Y. Mar. 29, 2022).

## V. Conclusion

**WHEREFORE**, for the reasons stated herein, it is hereby:

**RECOMMENDED**, that plaintiff's motion (Dkt. No. 12) be **GRANTED**; and it is further

**RECOMMENDED**, that the Commissioner's motion (Dkt. No. 13) be **DENIED**; and it is

**RECOMMENDED**, that the Commissioner's decision be **REVERSED and REMANDED for further proceedings**; and it is

**ORDERED**, that the Clerk serve a copy of this Report-Recommendation and Order on all parties in accordance with Local Rules.

**IT IS SO ORDERED**.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS**

**REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**.  See Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993) (citing Small v. Secretary of Health and Human Servs., 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 6(a), 6(e), 72.

Date:   August 21, 2024
        Albany, New York

Christian F. Hummel
U.S. Magistrate Judge